**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELINDA G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-1584-JSD |
| | ) | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Melinda G. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB and SSI. For the reasons stated herein, the decision of the Commissioner is affirmed.

## I. Background

Plaintiff filed for DIB and SSI on October 28, 2022. (Plaintiff's Statement of Material Facts ("PSUMF"), ECF No. 19, ¶ 1) Plaintiff's request was denied upon reconsideration, on September 19, 2023. (PSUMF, ¶ 3) On April 23, 2024, Plaintiff appeared for a hearing before an administrative law judge ("ALJ"). (PSUMF, ¶ 5) The ALJ issued an unfavorable decision, dated October 17, 2024. (PSUMF, ¶ 19) On August 28, 2025, the Appeals Council denied review. (PSUMF, ¶ 27)

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 2, 2020, the alleged onset date. (PSUMF, ¶ 20) At Step 2, the ALJ found Plaintiff had the following severe medically determinable impairments: disk protrusion at L5-S1 with mild-to-moderate central canal stenosis; non-rheumatic mitral valve regurgitation; diabetes mellitus; asthma/allergic rhinitis/lung nodules/moderately severe diffusion defect; hypertension; migraine headache; osteoarthritis of the left hip; seronegative rheumatoid arthritis; cervical spine degenerative disk disease; moderate osteoarthritis of the right shoulder; mild left carpal tunnel syndrome; mild left ulnar/wrist nerve entrapment neuropathy; nicotine dependence; post-traumatic stress disorder (PTSD); major depressive disorder; generalized anxiety disorder; and bipolar disorder. (PSUMF, ¶ 21) At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (PSUMF, ¶ 22) The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR §404.1567(b) except:

> she can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant cannot balance on narrow, slippery, or erratically moving surfaces, but she can engage in occasional stooping, kneeling, crouching, and crawling. The claimant cannot perform overhead reaching bilaterally, but she can engage in frequent fine and gross manipulation. The claimant cannot work at unprotected heights or around hazardous machinery, nor can she perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices. The claimant can have no concentrated exposure to extreme heat, cold, humidity, wetness, dust, fumes, or other pulmonary irritants, such as caustic chemicals. She can work in an environment with a noise level of no more than 3 (moderate) and with lighting no brighter than a typical office or retail environment. The claimant can maintain the concentration required to understand, remember, and carry out simple and routine tasks. The claimant cannot work at a fast pace, such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented pace. The claimant is limited to work that requires only occasional changes in the work setting which are introduced gradually, and she can have occasional interaction with co-workers, supervisors, and the public.

.

(PSUMF, ¶ 23) At Step 4, the ALJ determined that Plaintiff could not perform any of her past work. (PSUMF, ¶ 24) At Step 5, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (PSUMF, ¶ 25) Therefore, the ALJ determined that Plaintiff was not disabled.

Plaintiff has exhausted all of the administrative remedies and is entitled to judicial review by this Court. *See* 42 U.S.C. § 405(g). As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II. Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets

the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

### A. Development of the Record

Plaintiff maintains that the ALJ failed to perform her duty to develop the record. (ECF No. 18 at 3) Plaintiff notes that the record contains medical records that reference her treating pain management doctors, Drs. Modh (or Moad), Mann, and Grimaldi. *Id.* at 3-4. That is, her medical records include her treating physicians referring her to pain management physicians or her receiving treatment from pain management doctors but that the actual records from those doctors were not received by the ALJ. *See* Tr. 728-29, 740, 749, 770, 994, 1009, 1247. Plaintiff asserts that "[o]nce the ALJ was aware that [Plaintiff] treated with pain management, the ALJ was obligated to obtain these treatment notes." (ECF No. 18 at 5 (citing SSR 17-4p))[1] Plaintiff contends that the ALJ could not have properly evaluated Plaintiff's credibility or determined her RFC

[1] *See* SSR 17-4 at https://www.ssa.gov/OP_Home/rulings/oasi/33/SSR2017-04-oasi-33.html (last visited 10/20/2026).

without the treatment notes from her pain management doctor "and, perhaps, a neurosurgeon." (ECF No. 18 at 6) Likewise, Plaintiff asserts that the ALJ's decision "cannot be within the 'zone of choice' because the ALJ failed to obtain this material evidence." (*Id.* (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008))

"The ALJ must neutrally develop the facts." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004)) "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo,* 377 F.3d at 806 ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931, n.2 (8th Cir. 2004); *see also Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)). The inquiry as to the completeness of the record focuses on "whether [the plaintiff] was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, [courts] will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993); *Harris v. O'Malley*, No. 4:23-CV-00287-AGF, 2024 WL 1989017, at *4 (E.D. Mo. May 6, 2024). Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so

long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

In this case, no crucial issue was undeveloped, and several physicians provided detailed clinical data and observations about Plaintiff's limitations. The ALJ carefully considered the record as a whole, giving substantial weight to statements based upon medical expertise and supported by the medical evidence, and appropriately weighed the opinions of the state agency physicians and consultants: James Toll, M.D., Susan Rosamond, M.D., Dr. Cole, Marsha Toll, Psy.D., Gretchen Brandhorst, Psy.D., and Keith Allen, Ph.D. The ALJ's decision shows she considered a large volume of medical evidence from the record, including physical and mental evaluation findings and observations from various providers, CT scans, echocardiograms, stress testing, x-rays, MRIs, ANA testing, arthroscopy, diabetes testing nerve conduction studies, and pulmonary function testing. (Tr. 19-29) The vast and overwhelming evidence supported the ALJ's decision that Plaintiff could still perform light work with other restrictions. (Tr. 19-29) Plaintiff has not shown that the evidence in the record provided an insufficient basis for the ALJ's decision. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019).

Further, Plaintiff has not demonstrated how she was prejudiced by the ALJ's failure to obtain the pain management evidence. See *Onstad*, 999 F.2d at 1234. Plaintiff does not show that the pain management records would have impacted the ALJ's decision, stating only, "The ALJ's failure to develop the record fully and fairly prejudiced [Plaintiff] because evidence from the pain management doctor and a neurosurgeon could have changed the opinions from the medical consultants and could have changed the outcome of this case." (ECF No. 18 at 6) Because Plaintiff has not identified how she was prejudiced or treated unfairly by the ALJ's supposed failure to develop the record, remand is not required. *See Onstad*, 999 F.2d at 1234.

In sum, no crucial issue was undeveloped, and several state agency physicians and consultants provided detailed analysis regarding Plaintiff's limitations based upon the record. The ALJ carefully considered the record as a whole, giving substantial weight to statements based upon medical expertise and supported by the medical evidence. *Stormo*, 377 F.3d at 806. The Court finds no basis for remand and affirms the decision of the Commissioner.

**B. Evaluation of Opinion Evidence**

In her brief, Plaintiff emphasizes that, on June 2, 2023 and September 18, 2023, two different medical consultants employed by Defendant wrote that Plaintiff "can understand, remember, and carry out a two-step command involving simple instructions… [t]he claimant retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace; but would struggle with detailed or complex instructions." (ECF No. 18 at 7 (citing Tr. 170-71, 210)) Similarly, in 2022, the Agency's medical consultants opined that Plaintiff was limited to "two-step commands … but she would struggle with detailed or complex instructions." (ECF No. 18 at 8 (citing Tr. 158, 170-71)) However, when the ALJ determined the RFC, she found that Plaintiff was not limited to only two-step commands, despite her claimed mental limitations:

> I conclude the findings regarding a limitation to two-step commands to be vague and not a proper vocational term. Additionally, there is no support for a finding that the claimant can do simple tasks consistent with unskilled work but would otherwise be even more limited to just one- and two-step commands. Thus, I give this specific phrase no consideration and have instead considered the vocationally relevant/policy compliant information in assessing the findings on mental limitations.

(Tr. 31) The ALJ found that the medical consultants' limitation of Plaintiff to two-step command was unpersuasive because it was vague and not a proper vocational term. (Tr. 31) Likewise, the ALJ found the record provided no support for finding that Plaintiff could do simple tasks consistent with unskilled work but would otherwise be even more limited to just one- and two-step

commands. (Tr. 31) Instead, the ALJ specifically stated that she "considered the vocationally relevant/policy compliant information in assessing the findings on mental limitations." (Tr. 31) The ALJ found the remaining findings partially persuasive. (Tr. 31) Although the ALJ found the moderate limitation findings in all the "paragraph B" criteria were persuasive, she determined that the actual restrictions were more appropriately addressed in the RFC finding. (Tr. 20, 31)

Plaintiff contends that the ALJ's analysis is incorrect and the phrase "two-step commands" is not vague or an improper vocational term. (ECF No. 18 at 8) More to it, Plaintiff notes that the Dictionary of Occupational Titles (DOT) defines level 1 reasoning development (R1) as follows: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* https://occupationalinfo.org/appendxc_1.html#III (last visited 11/2/2026). Conversely, the DOT defines level 2 reasoning as, "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*. Thus, Plaintiff maintains that "two-step command" is not vague and is a vocational term, given that the DOT specifically defines one- or two-step instructions. (ECF No. 18 at 9) Plaintiff points out that, if she were limited to two-step commands, then she could only perform jobs with a reasoning level 1 (R1). *Id*. Plaintiff, however, emphasizes that the ALJ did not inquire of Defendant's vocational expert (VE) whether an individual with her RFC, who is also limited to two-step commands, can perform other jobs at Step 5 of the sequential evaluation. *Id*. Thus, Plaintiff contends that "since the VE's testimony is not based on a properly-phrased hypothetical, the testimony does not provide substantial evidence to support the denial at Step 5." (ECF No. 18 at 10)

The Court holds that the ALJ's conclusion as to the phrase "two-step commands" was proper because Plaintiff's mental limitations were more relevant to the analysis in Step 3. As noted, the ALJ found that mental restrictions were properly addressed as part of her RFC determination. The ALJ found that these moderate limitations in the "paragraph B criteria" were persuasive and then assessed work-related limitations that resulted from those moderate limitations. (Tr. 19-20, 22, 28-29, 31). The ALJ correctly noted that "[t]he limitations identified in the 'paragraph B' criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 20) *See also Titles II & XVI Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) ("The limitations identified in the 'paragraph B' criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."); *Chismarich v. Berryhill*, 888 F.3d 978, 979–80 (8th Cir. 2018) ("He argues specifically that the "Psychiatric Review Technique" for the assessment of alleged mental impairments in the analysis of severity, 20 C.F.R. § 404.1520a, must be consistent with the ALJ's Residual Functional Capacity determinations. As a general proposition, this assertion is unobjectionable and correct. As a practical matter, however, the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized."); *see Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard."). The ALJ thus addressed these restrictions at Step 3. *See* Tr. 31 ("Although I conclude that moderate findings in all 'paragraph B' criteria are persuasive, the restrictions are more appropriately addressed in the residual functional capacity above."). Indeed, the Court holds that

the work restrictions included by the ALJ adequately accounted for Plaintiff's moderate mental limitations, which were supported in the record:

> Turning to her mental limitations, the claimant can maintain the concentration required to understand, remember, and carry out simple and routine tasks, but she cannot work at a fast pace, such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented paceunderstanding [sic], given her moderate limitations in remembering, or applying information, as well as concentration, persistence, or pace. Further, on account of her moderate limitations in adapting or managing herself, she is limited to work that requires only occasional changes in the work setting which are introduced gradually. Additionally, she limited [sic] to occasional interaction with co-workers, supervisors, and the public on account of her moderate limitations in interacting with others.

(Tr. 32) These restrictions were intended to address the same mental limitations that Plaintiff contends were raised by Defendant's medical consultants. *See* Plaintiff's Brief, ECF No. 18 at 7-8; *see also Morand v. Berryhill*, No. 416CV01295DGKSSA, 2018 WL 1333978, at *3 (W.D. Mo. Mar. 15, 2018) ("Morand believes that the ALJ's RFC did not properly account for her moderate difficulties in concentration, persistence, or pace. The Eighth Circuit has held that a limitation to "simple routine repetitive work" sufficiently accounts for deficiencies in persistence, concentration, or pace. "); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 1997) ("Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures Howard's deficiencies in concentration, persistence or pace."); *Brachtel v. Apfel,* 132 F.3d 417, 421 (8th Cir.1997) (holding that hypothetical including the "ability to do only simple routine repetitive work, which does not require close attention to detail" sufficiently describes deficiencies of concentration, persistence or pace.); *Tyman v. Colvin*, No. 12-cv-01022-REL, 2014 WL 467517, at *13 (W.D. Mo. Feb. 6, 2014).

Further, the ALJ relied on medical evidence—including the opinions of State-agency consultants, Marsha Toll, Psy.D., Gretchen Brandhorst, Psy.D., and Keith Allen, Ph.D.,—in

determining that Plaintiff was moderately limited in all "paragraph B" criteria. The ALJ noted that "[t]he consultants support their findings with narrative explanation, including cites to the record and mental status examination findings," however, they were "not fully consistent with the record as a whole." (Tr. 31) The ALJ pointed out that, while Plaintiff described difficulty with her memory, concentrating, completing tasks, and paying attention, she was also able to make simple meals, shop, read, drive, and play games. (Tr. 31, 62-63, 361-64, 372-74, 399-400). She also detailed that the record does not reflect significant issues with Plaintiff's memory and it repeatedly was described as "adequate," and that she had "adequate insight and judgement, is noted to be alert and oriented, has logical sequential flow of thought, and adequate attention span and concentration." (Tr. 31, 512, 523, 534, 543, 554, 557, 568, 570, 574, 580, 588, 644, 770, 805, 1063, 1502-24, 1534).

The ALJ then adequately and properly accommodated Plaintiff's moderate mental limitations in the RFC finding, including her ability to concentrate, understand, and carry out tasks. (Tr. 20) The ALJ limited her to simple and routine tasks and required an environment that allowed her to maintain a flexible and goal-orientated pace, with only occasional changes in the work setting that would be introduced gradually. *Id*. Likewise, she was to have only occasional interaction with co-workers, supervisors, and the public. *Id*. The Court finds that the ALJ fashioned the RFC to address Plaintiff's subjective complaints to the extent that they were supported in the record. Plaintiff, who bears the burden of proving her RFC, has not proven additional limitations. *See Eichelberger*, 390 F.3d at 591. The Court likewise finds that the objective medical evidence on which the ALJ relied supported the modified light work RFC the ALJ adopted, and "[t]he weighing of evidence 'is ultimately ... reserved to the [ALJ].'" *Bonham*, 177 F.4th at 945 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Indeed, Plaintiff's criticisms amount to a request

for the Court to "reweigh the evidence presented to the ALJ," *Baldwin v. Barnhart,* 349 F.3d 549, 555 (8th Cir.2003) (citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), which it cannot do.

Moreover, the Court finds that the hypothetical question posed to the vocational expert was proper as it was framed based upon the well-supported RFC. "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir.2001) (citing *Prosch,* 201 F.3d at 1015). The ALJ properly included only those limitations supported by the record as a whole in the hypothetical. *See Haggard v. Apfel,* 175 F.3d 591, 595, (8th Cir.1999) (holding an ALJ need not include additional complaints in the hypothetical not supported by substantial evidence). "A vocational expert's testimony 'based on a properly phrased hypothetical question constitutes substantial evidence.'" *Id.* (quoting *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996)). Accordingly, the ALJ's hypothetical was proper. Therefore, the Court will not disturb the ALJ's findings. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

Finally, even if it was error for the ALJ not to consider the term "two-step command" because she considered it to be vague and not a proper vocational term, the Court holds that any error in that finding was not determinative of the outcome and "the ALJ's 'arguable deficiency in opinion-writing technique,' *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992) (quotation and citation omitted), had no bearing on the outcome of [Plaintiff's] case and does not require remand." *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011); *Forte v. Barnhart,* 377 F.3d 892, 896. (8th Cir. 2004) (an arguable deficiency in opinion writing technique is not sufficient reason to set aside an opinion if the deficiency "probably had no practical effect on the outcome of the case."); *Montgomery v. Astrue,* No. 4:09CV00881 JLH/BD, 2011 WL 744977, at *4 (E.D. Ark. Feb. 3, 2011), *report and recommendation adopted,* No. 4:09CV00881 JLH/BD, 2011 WL 744974 (E.D.

Ark. Feb. 24, 2011) ("[M]ere errors in opinion-writing are not grounds for reversal."); *McGinnis v. Chater,* 74 F.3d 873, 875 (8th Cir.1996) (asserted errors in opinion-writing do not require a reversal if the error has no effect on the outcome).

Thus, the Court finds that the RFC was based upon substantial evidence and affirms the decision of the Commissioner.

## IV. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of November, 2026.